Victor A. Sipos, Utah Bar No. 9211
Sipos Law, PLLC
10421 South Jordan Gateway, Suite 600
South Jordan, UT 84095
Tel: 801-860-3444
Fax: 801-665-1266
Email: victor@siposlaw.com

Attorney for relator Bart Andersen

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BART ANDERSON<br><br>        Plaintiffs,<br><br>v.<br><br>BIG-D CONSTRUCTION CORPORATION; CREATIVE TIMES DAY SCHOOL, INC; CACHE VALLEY ELECTRIC COMPANY; ADVANCED SOLUTIONS GROUP, LLC; and DOES 1-100,<br><br>        Defendants. | Case No.: 1:11-cv-176<br>Judge: Hon. Clark Waddoups<br><br>**RELATOR BART ANDERSEN'S MOTION TO ENFORCE SETTLEMENT** |

This motion is to enforce an agreement reached between relator Bart Andersen ("**Relator**") and defendant Big-D Construction Corporation ("**Defendant**") about the payment of attorney fees. On January 20, 2018, Defendant made an offer by email. On January 22, 2018, Relator accepted the offer. Thereafter, Relator performed on the terms of the agreement, giving enormous benefit to Defendant. But Defendant has refused to perform unless Relator agrees to additional material terms never mentioned in the offer or acceptance. Relator has tried in good faith to work with Defendant to resolve the issue, but the parties are at impasse. Relator asks this Court to enforce the parties' agreement.

## BACKGROUND FACTS

1. Relator filed this action in 2011. On October 10, 2017, the Court entered the ORDER RE INTERVENTION (ECF Doc. 67) recognizing that the United States government had intervened in some, but not all, claims alleged in the action.

2. Before and during January 2018, Relator and Defendant were involved in negotiating two agreements that were both entered in late January:

   a. A two-party agreement between Relator and Defendant related to attorney fees under 31 U.S.C. § 3730(d) ("**Attorney Fee Agreement**").

   b. A three-party agreement between the Relator, Defendant, and the United States government about resolving the underlying claims related to Defendant in this lawsuit ("**DOJ Agreement**").

3. Before either agreement had been entered, Relator's counsel informed Defendant's counsel that Relator would not enter the DOJ Agreement until a the parties had entered an agreement to resolve attorney fees.

4. On January 20, 2018, Defendant's counsel sent Relator's counsel the following email, a copy of which is attached as Exhibit 1 ("**January 20 Email**"):

   > Rule 408
   >
   > Hi Victor: following up my email below, I was able to connect with BigD and wanted to loop back with you.
   >
   > BigD offers $65k on a take it or leave it basis, which would include Full satisfaction of Attorney's fees, dismissal with prejudice of the complaint, a mutual release, Including of Big D, and It's related entitles and Individuals, etc.

5. On January 22, 2018, Relator's counsel responded by email as follows, a copy of which is also at Exhibit 1 ("**January 22 Email**"):

> Mr. Andersen has authorized me to accept the terms in your email dated Jan 20, 2018 at 11:50 AM, which as we understand them are in the form or the attached agreement (same as earlier, I just included payment amount and option for wire). Again, with the confidentiality, it can be included or not, Big-D's choice.

6. Relator's counsel attached to the January 22 Email a document titled Big-D and BA agreement.dox, a copy of which is attached as Exhibit 2 ("**Proposed Paper Agreement**").

7. Only after sending the January 22 Email and the Proposed Paper Agreement, and relying on the existence of the Attorney Fee Agreement, Relator agreed to enter the DOJ Agreement. Through this, Relator acted to satisfy the term of the Attorney Fee Agreement that called for "dismissal with prejudice of the complaint."

8. On January 25, 2018, the United States government filed a NOTICE OF SETTLEMENT, ECF Doc. 72, indicating that the United States, Relator, and Defendant had entered into the DOJ Agreement.

9. The DOJ Agreement provided enormous value to Defendant because it resulted in dismissal of claims against Defendant; not only those claims that the United States had intervened in, but additional claims in which the government did not intervene that Relator had a right to pursue before it agreed to the DOJ Agreement.

10. Defendant refuses to perform on the Attorney Fee Agreement. After the DOJ Agreement was entered, Defendant stated it would not pay the $65,000 amount unless Relator agreed to material new terms that were not part of the Attorney Fee Agreement reflected in the January 20 and 22 Emails.

11. Counsel for Relator and Defendant have tried to resolve their differing positions about whether a paper agreement is required at all, and if it is, whether Defendant can require materially different terms than it offered in the January 20 Email.

12. Among several solutions proposed by Relator is that the Attorney Fee Agreement memorialized in the January 20 and 22 Emails are capable of enforcement and do not contemplate the need for any further paper agreement. Defendant has rejected this position altogether and claims that no agreement has yet been reached and Relator must now agree to material new terms.

13. None of Defendant's proposed terms for a new paper agreement modifies the $65,000 payment amount in any way. The new terms are not monetary in nature.

## ARGUMENT

**A.    This Court has authority to enforce the parties' settlement agreement.**

As explained by the Tenth Circuit,

> "A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while litigation is pending before it." United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir.1993). "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." Shoels v. Klebold, 375 F.3d 1054, 1060 (10th Cir.2004). Under Utah law, courts will enforce settlement agreements "if the record establishes a binding agreement and the excuse for nonperformance is comparatively unsubstantial." Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc., 781 P.2d 478, 479 (Utah Ct.App.1989) (quotation omitted).

Nature's Sunshine Prod. v. Sunrider Corp., 511 F. App'x 710, 714 (10th Cir. 2013). "It is quite well established that a settlement agreement may be summarily enforced by motion in the court of the original action." U.S. ex rel. Air-O-Fasteners, Inc. v. Mike Barnett Const., Inc., No. 1:13CV050, 2014 WL 2640705, at *2 (D. Utah June 12, 2014) (quoting Tracy-Collins Bank & Tr. Co. v. Travelstead, 592 P.2d 605, 607 (Utah 1979) ("A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effected; it is through that court the carrying out of the agreement should thereafter be controlled. Otherwise the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus.")

> "***Settlements are favored in the law, and should be encouraged, because of the obvious benefits accruing not only to the parties, but also to the judicial system***. An expeditious means of enforcing a settlement agreement is conducive to this policy of law in that it adds the presence of judicial finality to the agreement, insuring that the goals of the parties as expressed in the agreement can be speedily attained."

Id., at 607 (emphasis added).

### B.   The January emails constitute a binding settlement agreement.

"Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." Shoels v. Klebold, 375 F.3d 1054, 1060 (10th Cir.2004); Nature's Sunshine Prod. v. Sunrider Corp., 511 F. App'x 710, 714 (10th Cir. 2013) (same). To determine whether a binding settlement agreement exists, courts employ the basic rules of contract formation. LD III, LLC v. BBRD, LC, 2009 UT App 301, at ¶1.

> "A binding contract exists where it can be shown that the parties had a meeting of the minds as to the integral features of the agreement and that the terms are sufficiently definite as to be capable of being enforced. Prince, Yeates & Geldzahler v. Young, 2004 UT 26, ¶ 13, 94 P.3d 179."

Id. at ¶ 14 (internal punctuation omitted).

Relator and Defendant had a meeting of the minds with respect to the Attorney Fee Agreement. Defendant's counsel wrote and proposed a settlement offer on January 20 as follows:

> Rule 408
>
> Hi Victor: following up my email below, I was able to connect with BigD and wanted to loop back with you.
>
> BigD offers $65k on a take it or leave it basis, which would include Full satisfaction of Attorney's fees, dismissal with prejudice of the complaint, a mutual release, Including of Big D, and It's related entitles and Individuals, etc.

See, Exhibit 1 at January 20 email.  Defendant's counsel selected the words and conditions included in its offer.

The terms of Defendant's January 20 Email "are sufficiently definite as to be capable of enforcement." LD III, 2009 UT App 301 at ¶14. The terms required: (1) Defendant to make a payment of $65,000; (2) Relator to agree to dismissal with prejudice of the complaint; and (3) the parties to enter a mutual release that included all of Big-D's related entities and individuals. Defendant's terms did *not* require any further negotiation, did *not* require any additional writing, and did *not* permit Defendant to refuse performance unless Relator later agreed to some material new terms that were not even mentioned in the emails.[1]

On January 22, Relator accepted the terms in the January 20 email and has never suggested otherwise. Relator included a Proposed Paper Agreement, but the acceptance was not conditioned on whether Defendant considered the terms in it acceptable.

Defendant has already received the benefit of the bargain in the Attorney Fee Agreement. After Relator accepted the agreement, and in reliance thereon, Relator's counsel contacted the United States government and agreed to enter the DOJ Agreement, thereby abandoning Relator's right to litigate other claims in this lawsuit.

Although the parties in this case exchanged more paper agreements that the parties could sign, that does not invalidate the existence of the Attorney Fee Agreement reached through email communications. But Defendant now claims there was no agreement and that it can refuse to pay unless Relator signs an agreement with material new terms that Defendant now also wants to include. Multiple courts have rejected Defendant's tactic. In Patterson v. Knight, 2017 UT App 22, 391 P.3d 1075, cert. denied, 398 P.3d 51 (Utah 2017), the parties reached an agreement with nine provisions, and the last two explicitly required that settlement was "[s]ubject to drafting mutually acceptable settlement agreement" and that dismissal would only happen "[u]pon

---

[1] Out of respect for confidential settlement communications, and because no new agreement has been reached after January 22 with respect to the Attorney Fee Agreement, Relator is not including herein the various negotiations that happened after the January 22 acceptance.

-6-

execution of final settlement documents." Id. at ¶ 2. Later, the parties could not agree to the language for those final documents, and one party claimed it had terminated the "proposed agreement subject to an agreeable final agreement." Id. at ¶ 3. The other party filed a motion to enforce the settlement. The trial court ruled an enforceable agreement had been reached notwithstanding the failure to negotiate a mutually acceptable final agreement. In affirming the trial court's ruling, the Utah Court of Appeals explained,

> "It is common for parties to later memorialize in a more formal document agreements created in mediation. This arrangement does not preclude the enforcement or finality of the agreement created in mediation so long as the terms are 'sufficiently definite as to be capable of being enforced.'"

Patterson v. Knight, 2017 UT App 22, ¶ 12 (citing LD III, LLC v. BBRD, LC, 2009 UT App 301, ¶ 14, 221 P.3d 867). In this case, the offer in Defendant's January 20 Email – and accepted in Relator's January 22 Email – did not suggest that any future paper would be required for an agreement to be formed.

It is proper for courts to enforce settlement terms exchanged only through email. See, e.g., Nature's Sunshine Prod. v. Sunrider Corp., 511 F. App'x 710, 713-15 (10th Cir. 2013) (affirming district court's ruling that granted motion to enforce a settlement that had been reached only through email exchange; rejecting argument that a signed paper agreement was required); Siribuor v. UHS of Denver, Inc., 2012 WL 3590791, at *6 (D. Colo. Aug. 20, 2012) (affirming district court's ruling that granted motion to enforce settlement reached through emails exchange; rejecting argument that email did not adequately describe material terms and it was to be left for paper agreement); LD III, LLC v. BBRD, LC, 2009 UT App 301, ¶ 20, 221 P.3d 867, 873 (affirming trial court's ruling that granted motion to enforce settlement reached through emails).

## **CONCLUSION**

Defendant January 20 Email made an explicit offer. Relator's January 22 email accepted that offer without condition. Defendant received the benefit of the bargain when Plaintiff agreed to the DOJ Agreement, resulting in a dismissal of all claims against Defendant. But ever since Defendant obtained its benefit, it has refused to perform unless Relator agrees to material new terms. Multiple courts have rejected Defendant's tactic and it should be rejected here. Relator asks this Court to enforce the Attorney Fee Agreement.

DATED: April 6, 2018                    SIPOS LAW, PLLC


                                        /s/ Victor Sipos
                                        By Victor Sipos
                                        Attorney for Relator Bart Andersen

-9-

CERTIFICATE OF SERVICE

     On the date indicated below, I filed this document using the court's CM/ECF system which will electronically serve the document to the individuals who are on the list to receive e-mail notices for this case. In addition, soon after receiving a stamped filed copy of this document through the ECF system, I will serve a copy of that document to the following individuals – each of whom are attorneys representing defendant Big-D Construction Corp. who have communicated with me about the case -- by sending this document and the referenced exhibits as PDF attachments in emails directed to the following:

Melissa Beutler, melissa.beutler@big-d.com
Gregory E. Goldberg, GGoldberg@hollandhart.com
Charles Lucy, CLucy@hollandhart.com

    DATED: April 6, 2018        SIPOS LAW, PLLC

                                        /s/ Victor Sipos
                                        By Victor Sipos

# EXHIBIT 1

3/30/2018 Sipos Law, PLLC Mail - Re: USA ex rel. Andersen v. Big-D

Case 1:11-cv-00176-CW Document 77 Filed 04/06/18 Page 11 of 15



Victor Sipos <victor@siposlaw.com>

**Re: USA ex rel. Andersen v. Big-D**

---

**Victor Sipos** <victor@siposlaw.com>  Mon, Jan 22, 2018 at 1:18 PM
To: "Gregory E. Goldberg" <GGoldberg@hollandhart.com>
Cc: Charles Lucy <CLucy@hollandhart.com>

Gregory,

The draft agreement with the government at section 12 already contemplates a separate agreement related to fees, and the government wants us to conclude that today. I've left you a message but haven't heard back from you. We are prepared to move forward.

Mr. Andersen has authorized me to accept the terms in your email dated Jan 20, 2018 at 11:50 AM, which as we understand them are in the form of the attached agreement (same as earlier, I just included payment amount and option for wire). Again, with the confidentiality, it can be included or not, Big-D's choice.

Victor Sipos
Sipos Law, PLLC
10421 South Jordan Gateway, Suite 600
South Jordan, UT 84095
Tel: 801.860.3444
Fax: 801.665.1266

This email and any files transmitted with it are confidential and intended solely for the use of the person(s) to whom they are addressed. If you have received this email in error, or if you believe it has been sent to you in error, please notify the sender immediately and delete this email from your system. If you are not the named addressee or intended recipient, you should not disseminate, distribute or copy this e-mail, or take any action in reliance on the contents thereof.

On Mon, Jan 22, 2018 at 11:13 AM, Victor Sipos <victor@siposlaw.com> wrote:
> Gregory,
>
> I'm guessing these terms would not be written out in the agreement signed by the USA and ▬▬▬▬▬, so we should probably have a separate document. Please review the attached. I tried to make it short and to the point borrowing terms from the document being negotiated with the government.
>
> Confidentiality is not particularly important to Mr. Andersen, but I'm guessing it might be for Big-D, so I included a term for that at paragraph 8. If Big-D does not want it, it can be left out.
>
> Victor Sipos
> Sipos Law, PLLC
> 10421 South Jordan Gateway, Suite 600
> South Jordan, UT 84095
> Tel: 801.860.3444
> Fax: 801.665.1266
>
> _____
> This email and any files transmitted with it are confidential and intended solely for the use of the person(s) to whom they are addressed. If you have received this email in error, or if you believe it has been sent to you in error, please notify the sender immediately and delete this email from your system. If you are not the named addressee or intended recipient, you should not disseminate, distribute or copy this e-mail, or take any action in reliance on the contents thereof.

On Sat, Jan 20, 2018 at 11:50 AM, Gregory E. Goldberg <GGoldberg@hollandhart.com> wrote:
> Rule 408
>
> Hi Victor: following up my email below, I was able to connect with BigD and wanted to loop back with you.
>
> BigD offers $65k on a take it or leave it basis, which would include Full satisfaction of Attorney's fees, dismissal with prejudice of the complaint, a mutual release, including of Big D, and it's related entities and individuals, etc.
>
> Thank you.
>
> Greg E. Goldberg
> Holland & Hart LLP
> 303.295.8099 (o)
> 303.668.7524 (c)

On Jan 19, 2018, at 6:03 PM, Gregory E. Goldberg <GGoldberg@hollandhart.com> wrote:

> Victor: apologies for the delay. Let's touch base early next week.
>
> Thanks much.
>
> GG
>
> **From:** Victor Sipos [mailto:victor@siposlaw.com]
> **Sent:** Friday, January 19, 2018 9:40 AM

3/30/2018 Sipos Law, PLLC Mail - Re: USA ex rel. Andersen v. Big-D

Case 1:11-cv-00176-CW Document 77 Filed 04/06/18 Page 12 of 15

**To:** Gregory E. Goldberg
**Subject:** USA ex rel. Andersen v. Big-D

Gregory,

Good speaking with you yesterday. I plan to respond to the government this afternoon and my discussion with them depends on Big-D's response to our discussion. Can you let me know if I can expect a response today?

Thank you,

Victor Sipos
Sipos Law, PLLC
10421 South Jordan Gateway, Suite 600
South Jordan, UT 84095
Tel: 801.860.3444
Fax: 801.665.1266

_____

This email and any files transmitted with it are confidential and intended solely for the use of the person(s) to whom they are addressed. If you have received this email in error, or if you believe it has been sent to you in error, please notify the sender immediately and delete this email from your system. If you are not the named addressee or intended recipient, you should not disseminate, distribute or copy this e-mail, or take any action in reliance on the contents thereof.

📄 **Big-D and BA agreement.docx**
29K

# EXHIBIT 2

**DRAFT 1/22/2018**

SETTLEMENT AGREEMENT RE RELATORS FEES

This Settlement Agreement ("Agreement") is entered into among the Big-D Construction Corp., Big-D Corporation, Big-D Capital Corp., Big-D Construction Southwest LLC, including any of the predecessors, successors, affiliated entities, attorneys, agents, and assigns of the fore named entities (collectively, "Big-D Entities") and Bart Andersen, including any of his heirs, successors, attorneys, agents, and assigns ("Relator Andersen"), relator in the lawsuit *United States ex rel. Bart Andersen v. Big-D Construction Corp., et al.*, U.S. District Court for Utah, Case No. 1:11-cv-00176 ("Utah Lawsuit").  Collectively, the parties are referred to as the "Parties."

RECITALS

A.   The parties hereto, along with the United States government and , are negotiating a proposed settlement agreement related to dismissal of the Utah Lawsuit and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

B.   Under 31 U.S.C. § 3730(d), Relator Andersen claims entitlement to attorneys' fees and costs related to the Utah Lawsuit.  This agreement is to establish the full and final payment of attorney fees payable to Relator Andersen from the Big-D Entities related to the Utah Lawsuit.  This agreement shall not impact the amount of any relator fees that Relator Andersen might receive from payments made to the United States government related to the Utah Lawsuit.

B.   This agreement is separate from any agreement that might be reached between the United States, Big-D Entities, Relator Andersen, and ▬▬▬▬▬▬▬▬. Nothing in such other agreement shall be deemed to replace the terms of this agreement.

To avoid the delay, uncertainty, inconvenience, and expense of litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.   Payment. The Big-D Entities shall pay sixty five thousand dollars ($65,000) ("Fee Amount") by wire transfer or check made payable to "Sipos Law PLLC Lawyer's Trust Account" (Tax ID 20-2478822) within 10 business days after a dismissal of claims is filed in the Utah Lawsuit. This shall constitute full satisfaction of the attorney fees payable to Relator Andersen. This payment shall not impact any relator fees that Relator Andersen might receive from the United States government related to any payment made from the Big-D Entities to the government related to settlement of the Utah Lawsuit and ▬▬▬▬▬▬▬▬.

2.   Mutual Release. Relator Andersen fully and finally releases the Big-D Entities, and the Big-D Entities fully and finally release Relator Andersen, from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, or expenses, set offs, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent, that each releasing party has ever asserted, could have asserted, or may assert in the future against each released party, including but not limited to any claim that Relator Andersen has or may have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

**DRAFT 1/22/2018**

       3.      Dismissal. Relator Andersen will consent to the proposed settlement agreement involving the United States government that would have the Big-D Entities pay $1,500,000 in exchange for dismissal of the Utah Lawsuit and ▮▮▮▮▮▮▮▮▮▮▮. Relator Andersen will take no action to hinder or limit dismissal of the Utah Lawsuit or ▮▮▮▮▮▮▮▮▮▮ against the Big-D Entities as would be provided for in the settlement agreement involving the United States government.

       4.      This Agreement is intended to be for the benefit of the Parties only.

       5.      With the exception of any agreement that might be reached involving the Parties and the United States Government related to the Utah Lawsuit and ▮▮▮▮▮▮▮, this Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

       6.      The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities as indicated. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement. This Agreement shall be governed by the laws of the State of Utah. If any portion of this Agreement is held invalid, the remaining portions are to remain in effect. Each party has been given the opportunity to comment on or modify the Agreement, and this Agreement shall not be construed against the party drafting it.

       7.      This Agreement is binding on the Big-D Entities' successors, transferees, heirs, and assigns. This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

       8.      Confidentiality. The Parties agree to keep this provision confidential except from their attorneys, accountants, or pursuant to court order or other formal legal process.

       9.      This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

DATED: January \_\_\_, 2018  BY: _____
                                           Name:
                                           Counsel for the Big-D Entities

DATED: January \_\_\_, 2018  BY: _____
                                           Victor Sipos, Sipos Law PLLC
                                           Counsel for Relator Bart Andersen